899 So.2d 726 (2005)
Diedre Kaye Housley ADAMS, Plaintiff-Appellant
v.
John Matthew ADAMS, Defendant-Appellee.
No. 39,424-CA.
Court of Appeal of Louisiana, Second Circuit.
April 6, 2005.
*727 Paul Henry Kidd, Jr., Monroe, for Appellant.
Mason L. Oswalt, Monroe, for Appellee.
Before WILLIAMS, STEWART, GASKINS, PEATROSS and MOORE, JJ.
STEWART, J.
At issue in this child custody dispute is whether the parents are bound by a stipulation in their prior custody agreement providing that any action to modify custody would be governed by the heavy burden applicable to considered decrees as set forth in Bergeron v. Bergeron, 492 So.2d 1193 (La.1986). Because parties are free to contract for any lawful object, because no public policy precludes them from agreeing to have future disputes governed by the Bergeron standard, and because their agreement serves the policies stated in Bergeron, we hold that the parties are bound by the stipulation in their custody agreement. Therefore, the judgment of the trial court denying the mother's exception of no cause of action is reversed, the exception is granted, and the matter is remanded to allow the father to amend his motion to state a cause of action for modification under the Bergeron standard.

FACTS
John Matthew Adams and Deidre Housely Adams (now Deidre Slifko) were married on May 26, 1990. Two children were born of the marriage, Alexandra Clare (DOB October 29, 1991) and Mitchell Reid (DOB May 19, 1994).
On July 11, 1997, Deidre filed a petition for divorce. Although a hearing regarding child custody, support, and related matters *728 was scheduled for December 3, 1997, the parties reached an agreement, and a judgment was entered by stipulation of the parties and signed by the trial judge on December 1, 1997. The judgment awarded the parties joint custody of the children and designated Deidre as the primary physical custodian. The judgment specified that John would have visitation one out of every four weeks, in addition to one weekend and one overnight visit during the three weeks the children were in their mother's care. A detailed summer and holiday visitation schedule was also specified. The judgment provided that John would pay child support in the amount of $733.33 per month. Also, the judgment contained the following stipulated provision:
That this judgment replaces and novates the previously entered Interim Judgment on Rule of September 12, 1997, and is deemed a final Judgment on Rule and is stipulated to have the same force and effect as a "considered decree" under Bergeron v. Bergeron, 492 So.2d 1193 (La.1986), and Long v. Long, 684 So.2d 1099 (La.App. 2d Cir.1996), and that the heavy burden of proof shall apply to both parties herein should either seek to modify primary custody and/or visitation;....
The parties' divorce was finalized by judgment rendered and signed on April 2, 1998. The divorce judgment confirmed and made permanent the prior judgment on rule regarding the child custody and support issues.
On October 31, 2003, John filed a motion to modify visitation and custody seeking to have the children spend alternating weeks with each parent. He cited the facts that the children are older and that the agreed upon arrangement is confusing to them as changes in circumstances warranting modification of custody. He alleged that the children had expressed the desire for an alternating weekly arrangement and that the alternating schedule would enable the children to visit more with each parent. Attached to the motion were letters purportedly from the children expressing their desire for the schedule sought by their father. In apparent anticipation of a dispute over the burden of proof for modifying the custody arrangement, John alleged that the previous judgment establishing custody cannot be deemed a considered decree, because no testimony was taken as to parental fitness and that, nevertheless, his motion seeks not to change custody, but to clarify it.
In response to John's motion, Deidre filed exceptions of no cause of action and improper use of summary proceedings. She also filed a motion to strike the children's letters. The no cause of action exception, which is at issue here, alleged that John failed to allege a substantial change of circumstances sufficient to meet the burden of proof agreed to by them in the stipulated judgment.
The matter came for hearing on April 5, 2004, at which time the court took up the no cause of action exception. Counsel for the parties stipulated that the 1997 judgment was entered by the parties, that counsel for each party spoke with his client and explained the meaning of the higher standard imposed by the stipulation, and that the court took no evidence as to parental fitness. After arguments, the court determined that it could not hold the parties to the consequences of Bergeron's heavy burden without there having been suitable evidence of parental fitness in an acceptable legal procedure. As such, the trial court denied Deidre's exception of no cause of action and declined to rule on the exception of improper use of summary proceeding. A judgment denying the exception *729 of no cause of action was signed on June 4, 2004, and Deidre's appeal followed.
Upon lodging of the appellate record, this court determined that the judgment was interlocutory in nature and, therefore, not appealable. Finding that the proper review procedure was through the exercise of this court's supervisory jurisdiction, we converted the appeal to an application for supervisory review and granted a writ of certiorari.

DISCUSSION
The peremptory exception of no cause of action is a procedural device used to test the legal sufficiency of the petition. In other words, the exception of no cause of action tests whether, under the allegations of the petition, the law affords any remedy for the grievance asserted. Fleet Fuel, Inc. v. Mynex, Inc., 38,696 (La. App.2d Cir.6/23/04), 877 So.2d 234; Long v. Long, 28,763 (La.App.2d Cir.12/11/96), 684 So.2d 1099, writ denied, 97-0096 (La.3/7/97), 690 So.2d 20. In the present case, whether the law affords a remedy depends in part on whether the agreement in the December 1997 stipulated judgment concerning the burden of proof is deemed enforceable.
The primary consideration in any child custody determination is the best interest of the child. La. C.C. art. 131; Powell v. Powell, 28,911 (La.App.2d Cir.12/11/96), 684 So.2d 1084. Jurisprudence provides different burdens of proof to modify custody in instances where the initial custody decree was either by stipulated (consent) judgment or a considered decree. When parties consent to a custodial arrangement and no evidence of parental fitness is taken, the party seeking modification has the twofold burden of proving (1) that there has been a material change in circumstances since the original custody decree, and (2) that the proposed modification is in the best interest of the child. Evans v. Lungrin, 97-0541, 97-0577 (La. 2/6/98), 708 So.2d 731. A considered decree is an award of permanent custody made when the trial court has received evidence of parental fitness. Id. The party seeking modification of a considered decree bears the heavy burden of proving that "the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or ... that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child." Bergeron v. Bergeron, 492 So.2d at 1200.
Jurisprudence has also determined that because a modification of visitation rights is not so substantial as a change in actual physical custody, a showing that the modification is in the best interest of the child is sufficient. Acklin v. Acklin, 29,193 (La.App.2d Cir.2/26/97), 690 So.2d 869.
A similar issue was before this court in Long v. Long, supra, wherein the parties entered a joint custody agreement which included the following statement:
"[t]hese stipulations and the resulting judgment have occurred after evidence has been produced, and ... that any future modification of the judgment ... shall be held to the standard of proof articulated in the Louisiana Supreme Court case of Bergeron v. Bergeron, 492 So.2d 1193 (La.1986)."
The facts relate that a hearing began and was recessed, after which the parties entered negotiations and came to an agreement. A few years after reaching the custody agreement, Mr. Long sought to alter the terms. The trial court dismissed Mr. Long's petition on the grounds that he did not allege facts sufficient to meet the Bergeron standard. Noting the circumstances that resulted in the consent *730 agreement and the policies favored by the Bergeron standard, this court affirmed the lower court's decision upon considering the joint stipulations to be a considered decree subject to the Bergeron burden of proof.
As in Long, supra, the parties in this matter entered a custody agreement with a stipulation that modification by either party would be subject to the Bergeron burden of proof applicable to considered decrees. Although the Long opinion concluded that the agreement was a considered decree, we do not believe it is necessary for us to reach the same conclusion here to find the parties bound by their stipulation.
Our law provides that the stipulated judgment is a bilateral contract between the parties, and as such, constitutes the law between them. Mobley v. Mobley, 37,364 (La.App.2d Cir.8/20/03), 852 So.2d 1136. It is the parties' voluntary acquiesence, not the court's adjudication, which gives the contract its binding force. Id. Parties are free to contract for any object that is lawful, possible, and determined or determinable that is not in violation of public policy. La. C.C. art.1971; Barrera v. Ciolino, 92-2844 (La.5/5/94), 636 So.2d 218. Here, the parties entered into a joint custody agreement which set forth the standard that would have to be met in order for their agreement to be modified. That agreement is the law between them. For their agreement to be deemed unenforceable, there must be some public policy consideration which is undermined by their stipulation regarding the burden of proof for modification. We can find no public policy reason to infringe on the freedom of contract in this instance.
In fact, we find that their agreement is supported by the very policies which underlie the Bergeron burden of proof-protection against harm done to children by custody litigation and threats thereof, changes in custody, continued parental conflict, and erroneous judgments. Bergeron, 492 So.2d at XXXX-XXXX. The importance of there being an "end to the litigation" and the undesirability of "change [to] the child's established mode of living except for imperative reasons" were identified by the supreme court as long-standing policies in custody modification matters. Bergeron, 492 So.2d at 1195. Additionally, this court has recognized that the purpose of the heavy burden is to avoid extensive and repetitive litigation that could be harmful to the child and to avoid unnecessary changes in the child's life. Wilson v. Wilson, 30,445 (La.App.2d Cir.4/9/98), 714 So.2d 35; Acklin, supra. Unnecessary litigation, the threat thereof, and continued parental conflict can bring about unfavorable mental and emotional consequences in children. Plunkett v. Plunkett, 576 So.2d 100 (La.App. 2d Cir. 1991).
It is also noteworthy that the supreme court did not exclude the possibility that changes in custody may be warranted absent "deleterious" circumstances. The supreme court recognized that there are instances where modification may be in the child's best interest such as when "the benefits to the child from modification of custody may be so great that they clearly and substantially outweigh any harm that will be likely to result from the change even though the present custody is not deleterious to the child." Bergeron, 492 So.2d at 1200.
We recognize the policy considerations that dictate a lesser burden in cases where the parties stipulate to a custodial arrangement without the presentation of evidence as to parental fitness. The absence of a heavy burden to modify a stipulated custodial arrangement may encourage settlement and help to avoid protracted and *731 potentially harmful litigation on the front end of custody disputes. Also, consent to less than ideal terms may be more palatable to a parent who may wish to seek modification in the future. However, these considerations are absent in the case sub judice where the parties' agreement calls for the heavy burden of proof and where the record indicates that the parties entered the agreement voluntarily and with understanding of its provisions. We note that the parties' joint custody implementation plan provides that the parties may agree to additional visitation. This suggests that they contemplated both that they might agree to modifications that could be implemented without litigation and that litigation might by deterred by the heavy burden agreed to by them.
The parties' stipulation that the heavy burden of proof would apply should either seek to modify the custody and/or visitation agreed upon does not violate the policies upon which the jurisprudential modification rules are founded. The stipulation serves to maintain the custody arrangement agreed to by the parties and thereby, hopefully, protect the children from vexatious litigation, changes in their living environment, and parental conflict.
The parties' stipulated judgment, like all child custody judgments, is subject to modification by the court upon the appropriate showing and according to the best interests of the child. Street v. May, 35,589 (La.App. 2d Cir.12/5/01), 803 So.2d 312, 319. In this instance, the appropriate showing to be made is that which meets the heavy burden stipulated to by the parties in their joint custody agreement. Therefore, custody may not be modified absent proof that the continuation of the arrangement is so deleterious to their children as to justify modification or that the harm likely to be caused by a change in environment is substantially outweighed by the advantages to the children.
The parties had the opportunity to litigate the custody of their children. Prior to the date of the hearing, they reached a detailed joint custody agreement with the assistance of legal counsel. They agreed that it would be treated as a considered decree for purposes of modification. The agreement, including the stipulation at issue, was accepted by trial court judge who signed the judgment on rule on December 1, 1997. The judgment on rule was made final by the judgment of divorce signed by the trial judge on April 2, 1998. No public policy consideration has been identified which would preclude enforcement of the parties' voluntary, court-approved agreement. Under these circumstances and considering the policies stated in Bergeron, we find no basis for disregarding the agreement of the parties. Therefore, we conclude that the trial court erred as a matter of law in finding the provision calling for the heavy burden of proof unenforceable.
Having determined that the parties' stipulation requiring the heavy burden of proof for modification of custody is enforceable, we must now review the allegations of the petition for modification to determine whether, if accepted as true, such allegations entitle John to a modification of the custody arrangement. Because the exception of no cause of action raises a question of law and is based only on the sufficiency of the petition, we conduct a de novo review to determine whether the exception has merit. City of New Orleans v. Board of Commissioners of Orleans Levee Dist., 93-0690 (La.7/5/94), 640 So.2d 237.
John's petition alleges only that the children are older than when the initial agreement was reached in 1997, that they have expressed an interest in spending more *732 time with him by having an alternating weekly schedule, and that the current custody arrangement is confusing to them. Viewing these allegations in the light of Bergeron's strictures, it is clear that they fall far short of allegations which could support a finding that "the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or ... that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child." Bergeron, 492 So.2d at 1200. Accordingly, we find that the petition fails to state a cause of action upon which relief could be granted, and we grant the exception of no cause of action.
When a petition which fails to state a cause of action can be amended to cure the defect, the court shall grant the plaintiff the leave to amend. La. C.C.P. art. 934; Carter v. Exide Corp., 27,358 (La.App.2d Cir.9/29/95), 661 So.2d 698. We cannot say that elaboration on the specifics regarding the connexity between the children's age and desire to spend more time with their father and the alleged negative impact of the current custodial arrangement would not set forth a cause of action under the Bergeron standard. Accordingly, the matter shall be remanded to the trial court to allow Mr. Adams an opportunity to amend his motion.

CONCLUSION
For the reasons set forth above, the judgment of the trial court denying the exception of no cause of action is reversed, the exception is granted, and the matter is remanded to allow Mr. Adams 15 days from the finality of this judgment to amend his motion to state a cause of action for modification under the Bergeron standard. Costs are assessed to Mr. Adams.
REVERSED, RENDERED, AND REMANDED.
GASKINS, J., dissents with reasons.
GASKINS, J., dissenting.
I respectfully dissent from the majority's opinion. In a custodial consent judgment, the parties enter an agreement that has as its paramount concern, not them, but the children. Normally, to modify this consent judgment, one party has only to show a change in circumstances and that the modification is in the best interest of the children. In a considered decree, the trial judge makes an assessment of parental fitness and considers other factors that allow a determination of the best interest of the children. To change this considered decree, the burden is a heavier one of proving that "the continuation of the present custody is so deleterious to the child as to justify a modification of the decree, or... that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child." Bergeron, supra.
When the parties agree in their original consent judgment to have any subsequent modifications governed by the Bergeron standard, the opportunity for a judicial assessment of parental fitness and other significant factors is effectively negated. For the parties to skip over such an important step of impartial review  which has as its focus the best interest of the children  is against public policy. I, therefore, would affirm the trial court's judgment.