STEPHENS, J.
Brian Lowe appeals a judgment of the Third Judicial District Court, Parish of Union, State of Louisiana, in favor of his previous wife, Yadaira Salas (formerly Lowe). The judgment was rendered in connection with his motion to modify custody and for contempt regarding the couple's two minor children. For the following reasons, we affirm the trial court's judgment.
FACTS AND PROCDURAL HISTORY
This is the third appeal concerning the custody determination in regard to the children of Brian Lowe and Yadaira Salas.[1] This court has previously rendered opinions *1257 in Lowe v. Lowe , 50,856 (La. App. 2 Cir. 5/18/16), 196 So.3d 672 (" Lowe I ") and Lowe v. Lowe , 51,588 (La. App. 2 Cir. 9/27/17), 244 So.3d 670 (" Lowe II "), 244 So.3d 670, both stemming from Brian's initial filing for divorce and custody of the children.
The background facts were articulated in Lowe I and are as follows:
[Brian and Yadaira] were married on September 3, 2005 in Orlando, Florida. They had two children, L.E.L., who was born on July 18, 2009, and L.G.L., who was born on November 23, 2011. During the marriage, the parties moved to several states in connection with Brian's administrative career with various professional sports teams. Eventually, the parties established their matrimonial domicile in the state of Tennessee.
In 2013, Brian was terminated from an administrative position in Memphis, Tennessee. Having no financial resources, in February 2014, the parties and their young children moved to Farmerville, Louisiana, to live with Brian's father. At the time of the move, Brian was hoping to gain employment as the athletic director at Grambling State University ("GSU").
Lowe I at 673. Upon relocating to Farmerville, employment for Brian with GSU never materialized. The couple's relationship deteriorated, leading to a domestic altercation and Yadaira moving out. She eventually moved to her hometown of Kissimmee, Florida (an Orlando suburb), where she owned a home with her mother. This record, as well as the records in the previous appeals, show Yadaira has lived there throughout the litigation.
On November 13, 2014, Yadaira notified Brian of her intent to relocate the children to Florida in June 2015, which notice was made pursuant to La. R.S. 9:355.5. Following that notification, Brian filed for divorce on November 24, 2014, and he requested designation as the primary domiciliary parent for the children-the original filing which precipitated this line of appeals. Yadaira answered Brian's petition and included her reconventional demand, where she asserted being domiciled in Florida and alleged she believed the children should be domiciled with her. The trial court granted Brian's request, named him the domiciliary parent, and Yadaira appealed.
In Lowe I at 684, this court concluded:
[T]he trial court erred in designating Brian as domiciliary parent. Our review of the record convinces us that Brian did not meet his burden of proving that he is capable of providing the children with their basic material needs, independent of his father's generosity. Consequently, we find that the interests of justice and the best interest of the minor children require that we remand this matter to the trial court for a determination of custody based upon a current presentation of the facts, particularly regarding Brian's capacity to provide the minor children with their basic material needs, independent of his aging father. (Emphasis added.)
Therefore, the trial court's judgment awarding domiciliary custody to Brian was reversed. It was noted in Lowe I that the "most troubling" point was the trial court's "failure to address the allegations of domestic abuse," particularly Yadaira's testimony that "Brian had a history of physically, verbally and emotionally abusing her." Lowe I at 683. The case was remanded to the trial court for an evidentiary hearing regarding domiciliary custody with instructions to take into consideration La. C.C. art. 134, specifically regarding Brian's ability to provide the children with "their basic material needs." Lowe I at 684.
*1258 The trial court complied with the instructions of Lowe I and conducted an evidentiary hearing (again, the basis of which was Brian's original filing in the trial court wherein custody of the children was to be determined). The parties agreed, pursuant to Lowe I , that the only evidence to be considered on this revisit of the matter was the current employment and economic situation with regard to Brian. After that hearing, the trial court awarded joint custody of the children to Brian and Yadaira, with Brian once more being designated as the primary domiciliary parent in Louisiana. Yadaira again appealed.
In Lowe II , this court reversed the trial court, concluding:
Brian did not meet his burden of proving his capacity to provide the minor children with their basic material needs, independent of his father. On the first appeal, this Court analyzed and discussed the La. C.C. art. 134 factors and found that the trial court erred in naming Brian as the domiciliary parent. This Court remanded the case to the trial court for a further hearing on Brian's economic situation. Because we have seen no significant change in Brian's employment or economic situation from the previous trial, we find he did not meet his burden of proof. Therefore, under the law-of-the-case doctrine, the initial ruling of this Court that the trial court erred in naming Brian as the domiciliary parent will stand. Accordingly, Yadaira shall be designated the domiciliary parent. (Emphasis added.)
Id. at 680. The opinion was rendered on September 27, 2017.
Hence, we arrive at the facts pertaining to this third appeal regarding Brian and Yadaira and their children's domicile. On December 6, 2017, Brian filed a rule for custody, for contempt and request for rule to show cause date, in which he claimed the parties were operating under an order of the trial court where he had been granted primary domiciliary custody of the children. He alleged that the children had gone to Florida to spend the Thanksgiving holiday week with Yadaira, which he claimed was in compliance "by the custodial rules of the pending Order." In his rule, Brian surmised that Yadaira would point to this court's opinion in Lowe II , which gave her primary domiciliary custody of the children; however, he also claimed that the Lowe II opinion did not comply with the Louisiana Relocation Act and was "devoid of any language actually allowing relocation to the State of Florida." Alleging that Yadaira did not follow the terms of the relocation statute, Brian maintained that a material change in circumstances had occurred which merited a change in custody in his favor.
Ultimately, the matter was set for hearing on June 18, 2018, following which a judgment was entered by the trial court denying Brian's motion. The trial court's judgment named Yadaira primary domiciliary parent (with the trial court noting the holding in Lowe II ), as well as making other orders regarding specific visitation, communication, and custody in general. This appeal by Brian ensued.
DISCUSSION
This case involves primarily one issue-the modification of custody of the Lowe children, which has been mostly mischaracterized by Brian as their out-of-state relocation.
Relocation
On appeal, Brian maintains that the burden of relocation was never met by Yadaira and argues that the trial court never considered the mandatory relocation principles found in La. R.S. 9:355 et seq. However, Brian's argument is misplaced because it is critical to understand that the *1259 trial court did not initially order the relocation of the children-that determination was made by this court in Lowe II . Thus, the trial court in the subject judgment simply followed the directive of this court in its opinion rendered September 27, 2017. It was not called to consider evidence on relocation, and the trial court's judgment was not a "relocation"; that issue had been determined by Lowe II . The trial court was tasked with considering a modification of custody. Moreover, we are not called to reconsider those decisions reached in Lowe I or Lowe II -had Brian wished review of those opinions, his remedy was to apply to the supreme court for a writ of certiorari. Therefore, we find this assignment of error is without merit.
Best Interest of the Children and Modification of Custody
In his first assignment of error, Brian maintains that the best interest of the children is having their domicile in Louisiana, and the trial court erred in finding otherwise. Although not directly characterized as such by Brian, his filing in the trial court actually sought modification of this court's previous determination in Lowe II naming Yadaira domiciliary parent. Taking a third look at largely the same facts, the trial court disagreed with Brian's attempt to modify custody. After hearing evidence presented by the parties and interviewing the children, the trial court took notice of Lowe I and Lowe II and concluded that a modification of the considered custody decree was not in order. The trial court particularly acknowledged this court's holding articulated in Lowe II . It also properly noted that "[u]nder the Bergeron standard, I cannot find that there's been such a substantial change in circumstances that-that I have authority" to change the domiciliary status from Yadaira to Brian. We agree.
Courts have an inherent power to determine a child's best interest and to tailor a custody order that minimizes the risk of harm to the child. Chandler v. Chandler , 48,891 (La. App. 2d Cir. 12/13/13), 132 So.3d 413. The trial court has vast discretion in deciding matters of child custody and visitation. Id. ; Slaughter v. Slaughter , 44,056 (La. App. 2d Cir. 12/30/08), 1 So.3d 788. This discretion is based on the trial court's opportunity to better evaluate the credibility of the witnesses. Id. The trial court's findings in child custody matters will not be disturbed on review without a showing of clear abuse. Bergeron v. Bergeron , 492 So.2d 1193 (La. 1986) ; O'Neal v. Addis , 52,377 (La. App. 2 Cir. 9/26/18), 256 So.3d 493.
It is well settled that the paramount consideration in any determination of child custody is the best interest of the child. La. C.C. art. 131 ; Evans v. Lungrin , 1997-0541 (La. 2/6/98), 708 So.2d 731 ; Wilson v. Finley , 49,304 (La. App. 2 Cir. 6/25/14), 146 So.3d 282. In determining the best interest of the child, the court must consider all relevant factors. La. C.C. art. 134 ; Manno v. Manno , 49,533 (La. App. 2 Cir. 11/19/14), 154 So.3d 655. Each case must be determined on the basis of particular facts and circumstances by weighing and balancing those factors favoring and opposing custody for the respective parents. Manno, supra . However, there is no requirement to provide a literal articulation of each of the factors of La. C.C. art. 134 in reaching a conclusion regarding the best interest of the children, nor is there a requirement to specifically explain the weighing and balancing of the article 134 factors. Chandler, supra .
A considered decree is an award of permanent custody made when the trial court has received evidence of parental fitness. Lucky v. Way , 51,706 (La. App. 2 Cir. 9/1/17), 245 So.3d 110, writ *1260 denied , 2017-1657 (La. 10/27/17), 228 So.3d 1233 ; Lawrence v. Lawrence , 50,799 (La. App. 2 Cir. 5/25/16), 197 So.3d 198, writ denied , 2016-1368 (La. 9/6/16), 205 So.3d 918. In an action to change a custody decision rendered in a considered decree, consideration of the child's best interest is made, but also an additional jurisprudential requirement is imposed. In such actions, the proponent of the change bears a heavy burden of proving that a change of circumstances has occurred, such that the continuation of the present custody arrangement is so deleterious to the child as to justify a modification of the custody decree, or that the harm likely caused by a change of environment is substantially outweighed by its advantages to the child. Bergeron, supra ; Lucky, supra ; Lawrence, supra .
Considering the record in this case, there is no legal basis for changing course as to custody and modifying the custody order, i.e. , Brian failed to prove that a change of circumstances had occurred, such that the continuation of being domiciled with Yadaira would be so deleterious to the children as to justify a modification of the custody decree, or that the harm likely caused by a change of environment was substantially outweighed by its advantages to the children. See Bergeron, supra ; Lucky, supra ; Lawrence, supra . Brian pointed to three circumstances he claimed warranted modification of the children's custody, all of which the trial court explicitly considered. First, LEL failed third grade and had a discipline problem in school. The trial court noted the difficulty in transitioning between schools, but believed Yadaira's characterization of their son's trouble in school. Second, Brian believed the children lacked sufficient extracurricular activities in Florida. Again, Yadaira explained to the trial court her goal of instilling order in the children's routines and establishment in their school prior to beginning any extracurricular activities. Finally, Brian believed the children lacked a formal religious experience, which the trial court expressed concerned over, but noted that it hardly could warrant a change in custody for that reason.
Importantly, the record reflects the trial court's interview with the children. Through that interview, as well as testimony by the parents and submitted evidence, the trial court assessed Brian's argument that the circumstances warranted modification. Clearly, the changes in circumstances are not substantial enough to warrant a modification. Notably, the parties have been in court disputing custody of their children since November 2014. Moreover, this court has twice determined the best interest of the Lowe children-that being their best interest is not having Brian as domiciliary parent. In fact, this court in Lowe II explicitly determined, considering La. C.C. art. 134 factors, the children's best interest was served with Yadaira as domiciliary parent.
Specifically, the concern over LEL's difficulty in his Florida schools is understandable; however, the record shows that for all of LEL's years in elementary school, his parents have been in litigation. Furthermore, LEL's problems are understandable considering he moved between states midyear, and Yadaira explained to the trial court that Florida schools have a more strenuous reading program than LEL's school in Louisiana. We do not see, despite setbacks in their son's academic performance, that the situation with Yadaira in Florida is so deleterious as to warrant a modification. Additionally, the children obviously have a loving relationship with their mother and grandmother, who run a disciplined household. Brian admitted that they are not neglected by Yadaira.
*1261 Moreover, we do not agree with Brian's assertion that Yadaira was in contempt regarding the trial court's custody order and that contempt warranted a modification in custody. That order of the trial court, which Brian argued was controlling, had been reversed by this court in Lowe II . A judgment of the appellate court is final and definitive, if neither an application for rehearing nor an application to the Louisiana Supreme Court for a writ of certiorari is timely filed. La. C.C.P. art. 2166. A judgment by an appellate court that decides the merits of the case is a final judgment, regardless of whether the case reached the appellate court on appeal or on supervisory writs. Succession of Poole , 2015-1317 (La. App. 1 Cir. 10/28/16), 213 So.3d 18, 23, citing Tolis v. Board of Supervisors of La. State Univ. , 95-1529 (La. 10/16/95), 660 So.2d 1206 (per curiam ). After the opinion was rendered in Lowe II , Brian filed neither a rehearing application to this court nor an application to the supreme court for a writ of certiorari (despite his assertion in the trial court that "said Second Circuit ... did not go through any of the provisions of the Louisiana Relocation Act and is devoid of any language actually allowing relocation to ... Florida."). Thus, the rendered opinion of Lowe II became a final judgment and had the effect of overruling the standing order by the trial court. Yadaira, whose residence was obviously known and acknowledged by the Lowe II court, became the domiciliary parent, and we do not consider her actions contempt of court.
Furthermore, we acknowledge the directive of La. R.S. 9:355.17, "Relocating without prior notice if there is a court order awarding custody or relocating in violation of a court order may constitute a change of circumstances warranting a modification of custody." (Emphasis added.) Even had Yadaira violated the trial court's order, as explained in Gray v. Gray , 2011-548 (La. 7/1/11), 65 So.3d 1247, 1260 :
We do not discern in this permissive language any intention on the part of the legislature to abrogate the well-accepted Bergeron standard for modification of a considered custody decree even in the context of a relocation, nor has any party directed us to legislative history that would support such a finding.... Given the extensive history and reasoning set forth in Bergeron for adopting a stricter burden of proof in custody modification cases, we see no reason to retreat from the heightened Bergeron standard when a party seeks to modify a considered custody decree even in the context of a request for relocation.
Finally, we consider the primary and ongoing issue of Brian's financial status in the various appeals. Whereas he takes issue with Yadaira's change in employment as an element in favor of modification, Brian's financial status has not changed much since Lowe I and/or Lowe II . When addressing Brian's 2017 IRS tax return, which did not reflect the earnings initially claimed by Brian at the hearing, the trial court questioned him in detail and finally noted:
[T]hat's part of your problem, Mr. Lowe .... [Y]ou won't answer questions directly. My question to you is, did you not testify that you get a minimum of five thousand dollars a month from this company and you've gotten as much as twelve thousand dollars per month? And I want you to tell me how do you prove that you've gotten those kind of payments.
Despite testifying that he earned from one of his business enterprises a minimum of $ 5,000 per month with the potential of $ 12,000 monthly, when later explicitly *1262 questioned by the trial court as to those amounts, Brian could not cogently explain his prior testimony.
Here, considering the foregoing, clearly Brian failed to carry his burden of proof articulated under Bergeron that modification of the domiciliary status of the parents is warranted. The trial court reasonably relied on the evidence and testimony before it-notably the parties and children themselves. Therefore, the trial court was not in error in not modifying the standing custody determination made in Lowe II . Thus, this assignment of error regarding the best interest of the children is without merit.
Motion for Continuance
Finally, Brian argues that the trial court erred in failing to grant his oral motion for continuance prior to the commencement of the custody hearing. In brief, Brian's attorney points to his experience with the trial court that an initial court hearing was used as a pretrial conference to work out issues pertaining to discovery. Apparently, he had not propounded any discovery requests to Yadaira on that basis.
A continuance may be granted in any case if there is good ground therefor. La. C.C.P. art. 1601. A motion for a continuance shall set forth the grounds upon which it is based, and if in writing shall comply with the provisions of article 863 (which dispenses with the necessity for verification). La. C.C.P. art. 1603.
A denial of a motion for continuance will not be disturbed on appeal absent a showing of an abuse of discretion by the trial court. Davis v. European Motors , 51,522 (La. App. 2 Cir. 8/9/17), 243 So.3d 1100.
Here, the record reflects the trial court's denial of Brian's motion for continuance, observing that Brian's attorney had not included discovery requests with the initial filing in December 2017. The trial court also took into consideration that Yadaira had traveled from Florida to Farmerville, Louisiana, solely in order to attend the hearing. We again observe that Brian and Yadaira have been litigating the same initial custody issue since Brian's petition for divorce filed in November 2014. The parties' financial circumstances, while not exactly the same, are mostly unchanged and unremarkable-a continuance for more discovery would not yield much more new information. Ignorance of the trial court's procedures and practices, as well as assumptions regarding same, are not valid excuses for a continuance-particularly when that claim comes from the one represented litigant. We find the trial court did not abuse its wide discretion in denying Brian's request for a continuance of this hearing, and this assignment of error has no merit.
CONCLUSION
For the foregoing reasons, the judgment in favor of Yadaira Salas (formerly Lowe) is affirmed. All costs of these proceedings are assessed to Brian Lowe.
AFFIRMED.

Salas is Yadaira's maiden name.